UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07cv108

| | |
|---|---|
| **FREDERICK L. BLUE,** )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**APPALACHIAN STATE UNIVERSITY** )<br>**AND CALDWELL COMMUNITY** )<br>**COLLEGE,** )<br>**Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the court on Defendant Appalachian State University's Motion to Dismiss and Memorandum in Support (Documents #8-9), filed April 24, 2008, Defendant Caldwell Community College's Motion to Dismiss and Memorandum in Support (Documents #15-16), filed May 23, 2008, and Plaintiff Frederick Blue's Responses to Motions to Dismiss (Documents #11, 12, 17), filed April 16, 2008 and November 24, 2008. This matter is now ripe for disposition.

## I. FACTUAL HISTORY

This is a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, brought pro se by Plaintiff Frederick Blue ("Blue") against Defendants Appalachian State University ("ASU") and Caldwell Community College ("CCC"). Blue, an African-American, was a student-employee of ASU hired in January 2007 to perform clerical work for the university. Blue's complaint does not allege that CCC was ever his employer, and Blue affirmatively admits that there was no employment relationship between himself and CCC in his Memorandum of Law in Response to Motion to Dismiss. (Document #12.)

On February 12, 2007, Blue was working at ASU when a CCC employee visited ASU for the

1

purpose of picking up mail. Within earshot of Blue, the CCC employee asked an ASU secretary, "Are we going to picnick (sic) a nigger today?" (Compl. 4.) Blue alleges that the ASU secretary responded by saying, "I guess we are." Id. Despite complaints made to other ASU employees, Blue avers that "to the best of my knowledge no corrective action was taken to correct the racially hostile environment." (Compl. 8.) However, Blue's complaint does not allege any further discriminatory comments or actions by ASU or its employees.

Lastly, in a "Memorandum of Law in Response to Motion to Dismiss and Address CHG" filed on November 12, 2008, Blue asserts that since the time of his original filing he has lost his job with ASU, been the subject of harassment by state and university police, and been forced to move to a different town as a result of harassment by the management of his apartment complex and repeated automobile break-ins. (Document #17.) In this memorandum Blue also asserts that the EEOC agrees that he was wrongfully discharged. Although Blue states that he has "the paper work" from the EEOC to support this claim, Blue has not filed these documents with the court. The Memorandum does not provide any additional facts to buttress Blue's claim.

## II.  DISCUSSION

### A. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (quotation omitted). In ruling on a motion to dismiss pursuant to this rule, the court must accept as true the factual allegations of the complaint and must view those allegations in the light most favorable to the plaintiff. Lambeth v. Board of Commissioners, 407 F.3d 266, 268 (4th Cir. 2005). However, the court is not bound to accept the legal conclusions offered in the complaint. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th

2

Cir. 1991) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim for relief is "plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1974 (2007). Since in this case Blue is proceeding pro se, the court will construe his pleadings liberally when ruling on Defendants' Motions to Dismiss. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

**B. Blue's claim against ASU**

Title VII makes it illegal for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In his complaint, Blue does not allege that he was the victim of a tangible employment action as a result of prohibited discrimination. Instead, he claims that he was discriminated against solely because of "racial comments made in the workplace." (Compl. 9.) For this reason, the court will treat Blue's complaint as a claim for racial discrimination resulting from a hostile work environment. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001) (recognizing that a hostile work environment claim "typically encompasses [discriminatory] conduct outside the realm of tangible employment actions").

Although racial harassment in the workplace is actionable if it creates a hostile work environment, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege of employment' within the meaning of Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Harassment is only actionable where it is "sufficiently severe or pervasive 'to alter the conditions of employment and create an abusive working environment.'" Id.

3

"Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment." Jordan v. Alternative Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006) (citation omitted).

When determining whether alleged conduct rises to this level, a court must examine the totality of the circumstances. In so doing, the court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). However, Title VII does not establish a "general civility code for the American workplace," Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)), and "mere utterance of an . . . epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. at 21 (citation and quotation omitted).

In light of these requirements, Blue has failed to state a claim for racial discrimination under Title VII because he has failed to allege facts indicating that the racial hostility of his work environment was so severe as to alter the conditions of employment or to create an abusive atmosphere. The comment allegedly made by the CCC employee and the response of the ASU secretary were certainly offensive and inappropriate. However, Blue does not allege that this type of behavior ever occurred again, much less that it was pervasive. Furthermore, the offensive exchange was initiated by someone who was not even an employee of ASU, and the racial epithet was also uttered by this person. Although this statement -- and the secretary's response --were highly inappropriate, one isolated incident is insufficient to support Blue's claim of a racially hostile work

environment. See Jordan, 458 F.3d at 340 (recognizing that a single racist comment cannot alter the conditions of employment and give rise to a hostile environment claim). Accordingly, Blue's complaint against ASU will be dismissed.

**C. Blue's claim against CCC**

Although Blue's claim for employment discrimination against CCC would fail for the same reason his claim against ASU fails, this claim also fails for a more fundamental reason: CCC has never been Blue's employer. As the statutory language makes clear, "there must be some connection with an employment relationship for Title VII protections to apply." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 189 (4th Cir. 1998) (quotation omitted). In the present case, Blue has not alleged any employment relationship with CCC. As a result, Blue's claim against CCC will be dismissed as well.

**D. Allegations in Blue's "Memorandum of Law in Response to Motion to Dismiss and Address CHG"**

Although Blue's complaint does not allege that he was the victim of a discriminatory employment action, in his most recent filing with the court -- submitted more than five months after replies were due to the Defendants' Motions to Dismiss -- Blue asserts that he has since been discharged for improper reasons. However, Blue has not amended his complaint to reflect this fact, and his Memorandum offers only a bare bones accusation without alleging any facts in support. The relevant portion of the document states in its entirety, "I have wrongly lost my job – the EEOC agreed – have the paperwork." (Document #17.)

Even under the liberal pleading standards afforded pro se litigants, this allegation standing alone does not state a claim for relief and cannot survive a Rule 12(b)(6) motion to dismiss. As the Supreme Court made clear in the recent case of Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1964-

5

65, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." (quotations and citations omitted). In the present case, Blue's Memorandum only states that he was wrongfully discharged. Blue does not say when this discharge occurred or why it was wrongful. No facts are presented to provide context to the claim or to give notice to the opposing party of the challenged conduct. In a similar Title VII case, the Supreme Court held that a plaintiff's pleading alleging discrimination on the basis of age and nationality was sufficient when it "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). Blue's Memorandum provides none of this information. Therefore, it does not give the Defendants "fair notice of what [plaintiff's] claims are and the grounds upon which they rest." Id.

For these reasons, any additional claim Blue may be attempting to assert in his "Memorandum of Law in Response to Motion to Dismiss and Address CHG" is not sufficiently pled and will be dismissed without prejudice at this time.[*] If Blue wishes to file a separate action regarding this claim he may do so, but he must provide a more ample statement of his case and some facts in support.

### III. CONCLUSION

**WHEREFORE,** for the foregoing reasons, Defendants' 12(b)(6) Motions to Dismiss are **GRANTED**.

---

[*]For the same reason, and to the extent that it attempts to raise a claim distinct from the hostile work environment claim discussed previously, a similarly terse allegation in Blue's Reply to ASU's Motion to Dismiss that "[t]he change in job placement, Library's Collection Department, created a hostile working environment" will also be dismissed without prejudice at this time.

Signed: March 16, 2009

Richard L. Voorhees
United States District Judge